IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02730-WYD-BNB

DAVID FRAZIER, and
JUSTIN D. CLAIBORNE,

Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ARAPAHOE,

Defendant.

_____

## ORDER

_____

This matter arises on the following:

(1)     **Plaintiffs' Motion for Order Compelling Discovery** [Doc. # 44, filed

10/15/2009] (the "Motion to Compel"); and

(2)     **Motion for Protective Order Pursuant to C.R.C.P. 26(c)** [Doc. # 58, filed

12/10/2009] (the "Motion for Protective Order").

For the reasons discussed below, the Motion to Compel and the Motion for Protective

Order are DENIED.

The plaintiffs were technicians employed in the Arapahoe County Weatherization

Department (the "Department").  They allege that the Department was a racially hostile work

environment and that they were discriminated against in their employment based on  race.

Amended Complaint [Doc. # 37]. The hostile work environment claim is based in part on a

noose discovered at the workplace, Amended Complaint at ¶25, and a dead squirrel found

suspended from a second noose two weeks later.  Id. at 26.  Plaintiff Frazier claims that a

performance and conduct audit of the Department technicians prepared by an Arapahoe County attorney (the "Matrix") which was the basis for the termination of two other technicians, but not Frazier, "was part of a pretext to camouflage a discriminatory or retaliatory motive in terminating Frazier."  Motion to Compel at p. 6.

1.  The Motion to Compel

The defendant asserts as its twelfth affirmative defense that it "exercised reasonable care and took prompt and effective remedial action to prevent and correct any discriminatory or retaliatory behavior or hostile or offensive work environment," (the "reasonable care defense") Answer [Doc. # 38] at pp. 14-15, and as its thirteenth affirmative defense that it "acted or made good faith efforts to act in compliance with applicable federal and state laws, regulations, and statutes" (the "good faith defense").  Id. at p. 15.

The Motion to Compel is cumbersome and difficult to understand.  It appears, however, that the plaintiffs seek to compel (1) testimony about matters discussed at meetings of the Board of County Commissioners in executive session concerning the investigation of the noose incidents, and (2) the production of the Matrix.

The plaintiffs do not dispute that the executive session discussions and the Matrix were initially privileged.  Instead, they argue that the privilege respecting those matters was impliedly waived by the County's assertion of its twelfth and thirteenth affirmative defenses.

In Aull v. Cavalcade Pension Plan, 185 F.R.D. 618 (D. Colo. 1998), the court held:

> Waiver of the attorney client or work product privileges can occur
> when the privilege holder asserts a claim or affirmative defense
> which puts the privileged matter directly at issue.  Such a waiver
> most often is found when a party affirmatively relies on privileged
> matter in asserting a claim or affirmative defense.

2

> To establish an at issue waiver, the Plaintiff must show:
> 1) assertion of the privilege was the result of some affirmative act,
> such as filing suit or assertion of an affirmative defense, by the
> party claiming the privilege; 2) through this act, the party put the
> protected information at issue, and; 3) application of the privilege
> would have denied the opposing party access to information vital
> to his or her defense.

Id. at p. 630 (internal citations omitted).

"[T]he mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver" of the privilege. Williams v. Sprint/United Management Co., 464 F. Supp. 2d 1100, 1107 (D. Kan. 2006). Instead, the key is whether the defendant will assert the privileged material in aid or furtherance of its argument that it complied with the anti-discrimination laws. Id.

Here, as in Williams, the defendant urges that it will not rely on any evidence in support of its reasonable care or good faith defenses which would open the door to an inquiry from plaintiffs requiring the defendant to assert the attorney-client privilege. 464 F. Supp. 2d at 1107-08. In other words, the defendant will not attempt to prove its reasonable care or good faith by relying on (1) events occurring in the executive sessions where the noose incidents were discussed or (2) the Matrix used to assess technicians other than Frazier. To the contrary, in connection with defending the hostile work environment claims based on the noose incidents, the defendant states that its evidence of reasonable care and good faith will be the following:

> [T]he prompt reaction by the Community Resources and Human
> Resources departments upon notice of Plaintiffs' complaints and
> the investigations conducted by these departments [but not] any
> contention by Defendant that will attempt to prove the defenses by
> evidence that the Board allegedly considered whether to refer the
> matter to the Sheriff.

Response [Doc. # 51] at pp. 7-8.

3

Similarly, the defendant states that it "has never asserted that it is going to rely on the advice of counsel or . . . on the audit or the matrix drafted by counsel to support that it terminated Plaintiff Frazier for legitimate non-discriminatory reasons." Id. at p. 11. Instead, the defendant asserts that the support for its defense that it terminated Frazier for a legitimate and non-discriminatory reason is found in Frazier's termination letter, which states:

> I have decided to terminate your employment as a Field Tech I for Arapahoe County effective today. this decision is based upon your conduct on March 20, 2009, where you approached Robin Cox, Auditor-Inspector, in a threatening manner, told him to "do something," and repeatedly swore at him be stating "mother f---er" more than once. This incident was witnessed by Steve Streeb, HVAC Supervisor, who was forced to use his shoulder to keep you away from Robin out of concern for Robin's safety. This incident was further investigated by the Human Resources Department and their investigation confirms that this sequence of event occurred in this manner.
>
> Based upon the events witnessed and reported by Steve Streeb and Robin Cox and the results of the investigation conducted by Human Resources, I believe that your behavior was threatening and inappropriate. Your actions violate the Anti-Violence policy set forth in the Human Resources Guidelines and also violate the Rules of Engagement.

Id. at Exh. D.

I find that the defendant, by the assertion of its reasonable care and good faith defenses which are supported by entirely different evidence, has not put at issue the content of the executive session discussions with counsel concerning the noose incidents or the creation or content of the  Matrix.  Because the evidence over which the defendant has asserted the attorney-client privilege has not been put at issue by the assertion of the reasonable care and good faith defenses, the defendant has not waived the attorney-client privilege with respect to the executive session discussions with counsel or its attorney's preparation or use of the Matrix.

4

<u>2.   The Motion for Protective Order</u>

Both plaintiffs seek the award of non-economic damages based on allegations of "mental suffering, emotional distress, loss of enjoyment of life, humiliation, and intimidation."  Motion for Protective Order at ¶3.  Both plaintiffs have received psychological treatment from Suzanne Kenneally, Psy. D.  <u>Id</u>. at ¶4.  Both plaintiffs have endorsed Dr. Kenneally to provide expert testimony in support of their claims for non-economic damages.  <u>Id</u>.

Dr. Kenneally has prepared written reports for each plaintiff containing her opinions and disclosing the data or other information considered by her in forming those opinions, as required by Fed. R. Civ. P. 26(a)(2)(B).  The defendant has submitted heavily redacted copies of the written reports.  Response [Doc. # 60] at Exhs. B and C.  A review even of the redacted reports discloses, however, that Dr. Kenneally has considered and relied on psychological test results in reaching her opinions about the plaintiffs' emotional conditions, including the results of the Millon Clinical Multiaxial Inventory III ("MCMI-III"), the Millon Behavioral Medicine Diagnostic ("MBMD"), and the Pain Presentation Inventory ("PPI") (collectively the "Psychological Tests").

The defendant subpoenaed Dr. Kenneally for the purpose of taking her deposition.  The subpoena commanded Dr. Kenneally to produce the following documents, among others, at the time of her deposition: "all documents relating to testing and test results on either plaintiff, including the Million [sic] Clinical Multiaxial Inventory-III (MCMI-III), the Million [sic] Behavioral Medicine Diagnostic, and the Pain Presentation Inventory."  Motion for Protective Order at Exh. 2 [Doc. # 58-4].

The Motion for Protective Order seeks to relieve Dr. Kenneally of the obligation to

produce the Psychological Tests.  In support of the motion Dr. Kenneally, by way of an affidavit,
asserts the following concerns: (1) the defendant's request requires her to violate ethical
guidelines of the American Psychological Association ("APA"); (2) the Psychological Tests
have already been disclosed to Dr. Kathleen Jens, a trained psychologist, who performed IMEs
on the plaintiffs at the request of the defendant; and (3) the publisher of the Psychological Tests
"considers the tests to be trade secrets."

I agree with the decision in Taylor v. Erna, 2009 WL 2425839 (D. Mass. August 3,
2009), which resolved objections identical to the first two raised here by Dr. Kenneally.  The
court in Taylor began by noting:

> Fed. R. Civ. P. 26 is intended to ensure that both parties to a suit
> are able to prepare for trial adequately.  "Under amended Fed. R.
> Civ. P. 26, which took effect December 1, 1993, all parties and the
> court should possess full information well in advance of trial on
> any proposed expert testimony or demonstrative evidence."
> Robinson v. Missouri Pac. R.R., 16 F.3d 1083, 1089 n. 6 (10th Cir.
> 1994).  Among other things, the expert witness' report must
> include the witness' opinions, the basis and reasons therefor, **and
> the data or other information considered by that witness in
> forming those opinions.**

Id. at *1 (emphasis added).

Section 9.04(b) of the APA Ethical Principles of Psychologists and Code of Conduct
specifically provides that a psychologist may provide test data "as required by law or court
order."  Consistent with that provision, the court in Taylor held:

> Any conflict [between the APA's Principles and Fed. R. Civ. P.
> 26(a)(2)] can be eliminated by court order.  The APA's Ethical
> Principles of Psychologists and Code of Conduct acknowledge that
> the ethical obligations of the professional must conform to legal
> directives.

2009 WL 2425839 at *2 n.2.

Here, as in <u>Schmitt v. Beverly Health and Rehabilitation Services, Inc.</u>, 1997 WL 728133 *4 (D. Kan. November 19, 1997), the production of the Psychological Tests pursuant to the protective order already in place in this case, which limits the disclosure of confidential information to only persons involved in the litigation and for use only in connection with the litigation, adequately disposes of Dr. Kenneally's and the plaintiffs' concerns about contractual or ethical limitations on the disclosure of the tests.

Dr. Kenneally's disclosure of the Psychological Tests to Dr. Jens is no solution.  First, I am informed that Dr. Jens "has not provided [the Psychological Tests] to Defendant's counsel in light of the present dispute."  Response at p. 3.  In addition, "Dr. Jens has not been disclosed by Defendant as a testifying expert and will not be testifying at trial."  <u>Id</u>.  In any event, it is defense counsel, and not an IME doctor, who must have the Psychological Tests to evaluate the strength of Dr. Kenneally's opinions and, potentially, to prepare her cross-examination.

Finally, the protective order in this case adequately protects any trade secrets which may reside in the Psychological Tests.  <u>Schmitt</u>, 1997 WL 728133 at *4.

IT IS ORDERED that the Motion to Compel [Doc. # 44] is DENIED.

IT IS FURTHER ORDERED that the Motion for Protective Order [Doc. # 58] is DENIED.

Dated February 3, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge